# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUAN ANH NGUYEN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE MCFARLAND DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 2:25-cv-03297-SKO (HC)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENT TO RELEASE PETITIONER, AND ENJOINING RESPONDENT FROM REDETAINING PETITIONER**<br><br>**ORDER TERMINATING OUTSTANDING MOTIONS [Docs. 6, 19]** |

Petitioner Tuan Anh Nguyen is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the reasons detailed below, the petition will be GRANTED.[1]

## BACKGROUND

Petitioner is a citizen of Vietnam who came to the United States as a refugee in 1979. (Docs. 12 at 2; 12-1 at 5, 7.) He then became a lawful permanent resident in 1982. (Docs. 12 at 2; 12-1 at 5.)

Petitioner was convicted of the following crimes:

---

[1] The parties consented to the jurisdiction of the Magistrate Judge, and on December 5, 2025, the case was assigned to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). (Docs. 5, 8, 9.) Accordingly, the matter will be adjudicated by the undersigned.

- May 31, 1989, Sexual Battery, in violation of California Penal Code (CPC) section 243.4, and sentenced to 100 days in jail;
- January 30, 1991, Burglary (Second Degree), in violation of CPC section 459, and sentenced him to 1 year and 4 months in prison;
- January 9, 1997, Grand Theft of Property, in violation of CPC section 487(a), and sentenced him to 1 year and 4 months in prison;
- January 24, 1997, Burglary, in violation of Nevada Revised Statutes section 205.060, and sentenced to probation up to 24 months;
- July 16, 1999, Providing False Identification to a Peace Officer, in violation of CPC section 148.9, and sentenced to 26 days in jail.

(Docs. 10 at 2; 12 at 3; 12-1 at 9-29.)

On or about April 25, 2000, Petitioner was ordered removed from the United States by an immigration judge ("IJ"). (Docs. 1 at 2; 12 at 3; 12-1 at 30.) In October of 2000, he was released pending removal on an order of supervision ("OSUP"). (Docs. 12 at 3; 12-1 at 32.)

In 2002, the Immigration and Nationality Service ("INS") requested travel documents from Vietnam. (Docs. 12 at 3; 12-1 at 36.) No such documentation was received. (Doc. 12 at 3.) On December 9, 2002, Petitioner was released on another OSUP. (Doc. 12 at 3; 12-1 at 38.) Petitioner remained under the OSUP and did not commit any crimes for the next 23 years.

In 2022, Petitioner was enrolled in the Compliance Assistance Reporting Terminal ("CART") to report once a year. (Doc. 12 at 4.)

On October 16, 2025, during his yearly work permit renewal at the Baltimore Field Office in Baltimore, Maryland, Petitioner was detained and taken into custody by the Bureau of Immigration and Customs Enforcement ("ICE"). (Docs. 1 at 2; 12 at 4; 12-1 at 40-41.)

On January 5, 2026, Respondent submitted documentation showing Petitioner was issued a Notice of Revocation of Release" and "Alien Informal Interview Upon Revocation of Order of Supervision" on December 24, 2025. (Doc. 15.) These determinations made more than two months after re-detention undercut any claim that Respondent made any such determination prior to re-detention.

2

There is also no indication when Respondents requested a travel document to Vietnam with respect to his re-detention. Respondents only proffer that "ERO is actively working to obtain a travel document for Petitioner to Vietnam." (Doc. 10 at 2.) The Court can only assume that, like every other case the Court has reviewed in the recent past, any such request was only made *after* Petitioner was re-detained. To date, Vietnam has not issued a travel document.

On November 13, 2025, Petitioner sought his release though a writ of habeas corpus on four grounds: (1) Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood of removal in the reasonably foreseeable future; (2) Petitioner's potential removal to a third country violates the Fifth Amendment, INA, Convention Against Torture; and implementing regulations; (3) removal to a third country constitutes banishment in violation of the Fifth and Eighth Amendments; (4) Petitioner's re-detention without changed circumstances, without proof that an ICE official determined there was a significant likelihood of removal, without notification of the reasons for revocation of release, and without an initial informal interview promptly after return to custody violated Petitioner's rights under statute and the Constitution. (Doc. 1 at 12-18).

The Court will begin and end its review with Petitioner's fourth claim, since relief on that claim is clearly warranted.

The Court notes that Petitioner filed a motion for temporary restraining order and motion for preliminary injunction on January 8, 2026. (Doc. 19.) Because the petition will be granted, the motions will be dismissed as moot.

**DISCUSSION**

**A. Jurisdiction**

Before turning to the merits, the Court must first assure itself of jurisdiction. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 583 (1999). Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." Zadvydas, 533 U.S. at 699. But the Supreme Court has consistently "rejected" any suggestion that

3

section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation. Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020). Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review. But because Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court finds that it has jurisdiction to determine the lawfulness of Petitioner's detention. See Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

**B. Due Process**

The Court finds that the Government has violated its own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances."[2]  § 241.13(i)(2). The Government asserts that it has assessed that "circumstances have changed such that [Petitioner's] removal will now be 'effectuated in the reasonably foreseeable future.'" (See Doc. 10 at 4). The Government has submitted documentation that it issued a "Notice of Revocation of Release" and "Alien Informal Interview Upon Revocation of Order of Supervision" on December 24, 2025. (Doc. 15.) Although these actions have been

---

[2] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release." But nowhere in the record does the Government purport to rely on this authority for the October 16, 2025, revocation of Petitioner's release, so the Court will not address this provision.

4

taken, "§ 241.13(i)(2) requires that this determination is made *before* the removable alien has had his release revoked." Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025); Nguyen, v. Noem, No. 25CV2792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("However, courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.. . . . This is so even when [] the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment." (quoting Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)). The record thus shows the changed-circumstances determination was apparently made over two months after re-detention on December 24, 2025, *not at or before* Petitioner's re-detention on October 16, 2025. (Doc. 15.)

There is also no indication that the Government submitted a request to Vietnam for travel documents until after his re-detention. And, to the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected. See, e.g., Phan v. Beccerra, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) ("Respondents contention that Petitioner's removal is reasonably foreseeable because removals to Vietnam are in fact occurring is unpersuasive" where "[p]re-1995 Vietnamese immigrants may be repatriated to Vietnam on 'a case-by-case basis'" and Vietnam has "discretion whether to issue a travel document to any individual." (quoting Hoi Thanh Duong v. Tate, No. 24-cv-04119-H, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025))). Therefore, the Court concludes based on this record that if ICE assessed a likelihood of Petitioner's removal before revoking his release, it could not have been "*on account of*" legally relevant changed circumstances pursuant to section 241.13(i)(2). With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2). See, e.g., Sphabmixay,

5

1  2025 WL 3034071, at *2 (finding the same). Indeed, the evidence submitted indicates the
2  determination was made well after Petitioner's revocation of release. (Doc. 15.)

3  Second, even if the Government had made a determination based on legally sufficient
4  "changed circumstances," the Court finds the Government also violated the section 241.13(i)(3)'s
5  notice requirement. Section 241.13(i)(3) sets forth "revocation procedures" governing revocation
6  carried out pursuant to this section. To revoke a removable alien's release under section
7  241.13(i)(3), an alien must "be notified of the reasons for revocation of his or her release" and
8  those reasons must be "stated in the [written] notification." 8 C.F.R. § 241.13(i)(3); see Tran, 2025
9  WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the
10 revocation of the alien's release").

11  Here, the written notice was apparently provided over two months after re-detention on
12 December 24, 2025. The Government's untimely actions fail to comport with the requirements of
13 section 241.13 and Petitioner's due process rights.

14  Finally, even if the Court found the Government had made a legally sufficient determination
15 of "changed circumstances" and that the Notice was sufficient under section 241.13(i)(3), the
16 Court finds the Government also violated section 241.13(i)(3)'s opportunity to be heard
17 requirement. In addition to the notice provision, section 241.13(i)(3) requires ICE to "promptly,"
18 after re-detainment, conduct "an initial informal interview" to "afford the alien an opportunity to
19 respond to the reasons for revocation." The interview was provided over two months after re-
20 detention, (Doc. 15), and fails to satisfy the requirement that Petitioner be "promptly" provided an
21 informal interview as required by section 241.13(i)(3). The Court, therefore, again finds the
22 Government violated Petitioner's due process rights by not complying with its own rule under
23 section 241.13(i)(3). See Tran, 2025 WL 3005347, at *3 (finding the same); see also Grannis v.
24 Ordean, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the
25 opportunity to be heard."); Niz-Chavez v. Garland, 593 U.S. 155, 172 (2021) ("If men must turn
26 square corners when they deal with the government, it cannot be too much to expect the
27 government to turn square corners when it deals with them.").

28  The Government does not appear to dispute that it has failed to follow its own rules for re-

detainment. In fact, the Government does not address Petitioner's argument that his due process rights were violated by the Government failing to abide by section 241.13's requirements.

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). Even if the Government were to obtain a travel document from Vietnam subsequent to re-detainment, Petitioner should be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5 ("Respondents also fail to specify whether ICE requested travel documents for Petitioner before or after his arrest. Thus, ICE's revocation of Petitioner's release does not appear to have been 'on account of' changed circumstances."). This Court will follow suit.

Because the Government was required to, but failed to comply with, section 241.13(i) when it revoked Petitioner's supervised release on October 16, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions. The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" GoTo.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)); see Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing McCormack v. Hiedeman, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Here, Petitioner had been on supervised release for over twenty years until he was re-detained by the government. Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on October 13, 2025. See Doe, 2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); Domingo-Ros v. Archambeault, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558

(S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); Pinchi v. Noem, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the Court finds Petitioner's immediate release is required to return him to the status quo.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The Petition for Writ of Habeas Corpus is GRANTED.

2) Petitioner's motion in support of release, (Doc. 6), and his motion for temporary restraining order and preliminary injunction, (Doc. 19), are DISMISSED as moot.

3) The Government is ORDERED to immediately release Petitioner from custody on the October 16, 2025, revocation of release and arrest. Petitioner is directed to comply with all conditions that were in effect before his October 16, 2025, re-detainment.

4) Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they obtain a travel document for his removal to Vietnam and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

5) The bond requirement of Federal Rule of Civil Procedure 65(c) is WAIVED. See Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

6) By January 12, 2026, at 5:00 p.m., the parties MUST FILE a joint status report to confirm that Petitioner has been released, after which the Clerk will close this case.

IT IS SO ORDERED.

Dated: __January 8, 2026__                   /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE

8